IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:15-cv-00020-MR
BANKRUPTCY CASE NO. 12-10848

| | |
|---|---|
| IN RE: )<br>)<br>AMY HOPE CHILSON, )<br>)<br>Debtor, )<br>_____ )<br> )<br>LANGDON M. COOPER, )<br>TRUSTEE, )<br> )<br>Appellant, )<br> )<br>vs. )<br> )<br>AMY HOPE CHILSON, )<br> )<br>Appellee. )<br>_____ ) | **MEMORANDUM OF**<br>**OPINION AND ORDER** |

**THIS MATTER** is before the Court on the appeal by Langdon M. Cooper, the Chapter 7 Trustee ("Trustee"), of the Bankruptcy Court's February 2, 2014 Order [B Doc. 39][1] granting Amy Hope Chilson's ("Debtor") Motion for Reconsideration [B Doc. 34]. The Trustee also appeals the

_____

[1] Citations to the record in Bankruptcy Court, Case No. 1:12-BK-10848 (W.D.N.C.), have the prefix letter B before the document number referenced on the Docket Sheet. (E.g., [B Doc. x]). Citations without such prefix are to the record in this Court, Civil Case No. 1:15-CV-00020-MR (W.D.N.C.).

Bankruptcy Court's January 26, 2015 Order [B Doc. 57] granting Debtor's Motion to Amend Schedules [B Doc. 26] and denying Trustee's Motion for Turnover [B Doc. 25].

## I. FACTUAL AND PROCEDURAL BACKGROUND

The essential facts of this case are not in dispute. On October 24, 2012, Debtor filed a voluntary Chapter 7 Petition. [B Doc. 1]. The Debtor claimed one individual retirement account held by Merrill Lynch both as personal property on Schedule B of her Petition and as property exempt from her bankruptcy estate on Schedule C. [B Doc. 1 at 7; 9]. On November 28, 2012, the Trustee held a meeting of creditors pursuant to 11 U.S.C. § 341(a). [B Doc. 3]. The Trustee subsequently spoke with Gary Chilson, a listed creditor and the Debtor's former husband, who provided the Trustee with copies of the separation agreement and New York divorce decree [B Doc. 31-1] which terminated the Chilsons' marriage in 2007.

Upon reviewing these documents, the Trustee learned that Mr. Chilson maintained a TIAA-CREF account and an IRA (two "retirement accounts") containing money he earned while married to the Debtor, a portion of which was adjudged to be the property of the Debtor in 2007 pursuant to the divorce decree. [Id.]. Gary Chilson and the Debtor's separation agreement, which was incorporated into the divorce decree [Id. at 2], prevented Mr. Chilson

from withdrawing from or otherwise diminishing the accounts, except as necessary to "transfer" to Debtor her share "through a qualified domestic relations order in a form acceptable to the Plan Administrators." [Id. at 12]. Such transfer, however, never took place. [B Doc. 57 at 2].

On October 4, 2013, the Trustee moved the Bankruptcy Court, in accordance with 11 U.S.C. § 542, for an order directing the Debtor's former spouse to turnover to the Trustee the Debtor's share of funds held in his retirement accounts. [B Doc. 25]. Shortly thereafter, the Debtor moved the Bankruptcy Court to amend Schedules B and C of her Petition to claim these funds both as personal property and as exempt from her bankruptcy estate. [B Doc. 26]. On December 27, 2013, the Bankruptcy Court entered an Order granting the Trustee's Motion for Turnover and denying the Debtor's Motion to Amend Schedules, concluding that under New York law, the Debtor's interest in the retirement accounts was "simply a right to payment" and therefore was an unencumbered asset of the bankruptcy estate. [B Doc. 33 at 3]. The Court further noted that the Debtor could not claim an exemption in the right to payment from these retirement accounts, as there was no "category of exemption for money owed to a debtor under the circumstances of this case, other than the wildcard exemption, and the Debtor has no remaining wildcard." [Id.]. Accordingly, the Court concluded that the Trustee

was entitled to a turnover of the funds represented by the right to distribution under the Separation Agreement for the benefit of the bankruptcy estate. [Id.].

Fourteen days later, the Debtor filed two motions. In her first motion, the Debtor asked the Bankruptcy Court to reconsider its December 27, 2013, Order due to a "misapplication of the law of . . . the State of New York." [B Doc. 34 at 1]. In her second motion, the Debtor sought in the alternative an extension of time to file a notice of appeal in the event the Bankruptcy Court denied her first motion. [B Doc. 35]. On February 4, 2014, the Bankruptcy Court heard the Debtor's motions. [B Doc. 43 Transcript]. At the hearing, the Debtor, through counsel, provided the court with eight additional cases,[2] and stated that the reason for the Motion to Reconsider was that " . . . my research wasn't as thorough as I thought it was originally." [B Doc. 43, Transcript at 3-4].

The Trustee countered that, procedurally, Rule 60 of the Federal Rules of Civil Procedure did not provide the proper mechanism to effectuate the relief requested by the Debtor. [Id. at 8-9]. The Trustee further objected to

---

[2] None of the eight cases offered by the Debtor were decided in the intervening period of time between the December 27, 2013 Order and the hearing on the Debtor's Motion for Reconsideration.

the Debtor's tardiness in offering additional pertinent case law, asserting that he did not have sufficient time to review the materials submitted in court by the Debtor.  [Id. at 9-10].

After hearing the arguments, the Bankruptcy Court agreed to reconsider its December 27, 2013 Order, and it gave the Trustee fourteen days to respond to the new materials submitted by the Debtor.  [Id. at 11-12]. The record in the Bankruptcy Court reflects that the Trustee did not file any memorandum within fourteen days after the February 4, 2014, hearing.  The Trustee did, however, file a Notice of Appeal on February 18, 2014, wherein the Trustee asked this Court to reverse the Bankruptcy Court's Order granting reconsideration.  [B Doc. 40].  On October 21, 2014, this Court dismissed the Trustee's appeal for lack of jurisdiction because at that time the Bankruptcy Court had not yet entered an Order setting forth its decision upon reconsideration.[3]  In re Chilson, No. 1:14-CV-45, 2014 WL 5358717, at *2 (W.D.N.C. Oct. 21, 2014).

Following this Court's dismissal of the Trustee's appeal of the Order granting reconsideration, a hearing was set to address the merits of the

---

[3] This Court further concluded that the Bankruptcy Court's February 13, 2014 Order resolved nothing in the litigation and thus was not a "final" order subject to appeal.  Id.

Trustee's Motion for Turnover and the Debtor's Motion to Amend. [B Doc. 54]. Both parties submitted briefs [B Docs. 55, 56], and a hearing was held on December 2, 2014. [B Docket Sheet].

On January 26, 2015, the Bankruptcy Court entered an order denying the Trustee's Motion for Turnover and granting the Debtor's Motion to Amend. [B Doc. 57]. In its Order, the Bankruptcy Court concluded that notwithstanding the lack of a pre-petition qualified domestic relations order ("QDRO")[4] under New York law the Debtor's interests in the retirement accounts were exemptible as retirement plans vested on the date of her divorce, rather than a non-exemptible right to payment as argued by the Trustee. [B Doc. 57 at 4]. The Bankruptcy Court reasoned that the Debtor's interest "was created by her marriage and the New York Judgment of Divorce. Nothing remained to create that interest; the QDRO was required

---

[4] Under the Employee Retirement Income Security Act of 1974 ("ERISA"), 88 Stat. 832, as amended, 29 U.S.C. § 1001 et seq., a "domestic relations order" is any judgment, decree, or order which "(I) relates to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependant of a participant, and (II) is made pursuant to a State domestic relations law...." 29 U.S.C. § 1056(d)(3)(B)(ii). To qualify as a QDRO, a domestic relations order "must create or recognize the interest in the ERISA plan" and "must include pertinent information such as mailing addresses and the amount and manner of payment." Metro. Life Ins. Co. v. Pettit, 164 F.3d 857, 863 (4th Cir. 1998).

simply to separate it from Mr. Chilson." [Id. at 3]. The Bankruptcy Court further reasoned that:

> Under these facts, entry of a QDRO would be a recognition of those already created interests. Merely adding her name to the accounts via a QDRO was not necessary to change Ms. Chilson's ownership of the accounts for exemption purposes. Meaning, by the terms of the separation agreement and Judgment, obtaining a QDRO would be ministerial and intended to provide comfort to the plan administrator.

[Id. at 3].

The Bankruptcy Court also rejected the Trustee's argument that the Debtor's alleged bad faith conduct precluded her from amending her schedules, reasoning that in light of Law v. Siegel, __ U.S. __, 134 S.Ct. 1188 (2014) and its progeny, the Court "lacks any statutory or equitable power under federal law to deny an exemption based on a debtor's bad faith or misconduct." [Id. at 4-5 (quoting In re Caillaud, No. 13-30835, slip op. at 6 (Bankr. W.D.N.C. Oct. 21, 2014)].

On February 3, 2015, the Trustee filed a Notice of Appeal, seeking reversal of the Bankruptcy Court's Order granting reconsideration [B Doc. 39] and reversal of the Bankruptcy Court's Order denying Trustee's Motion for Turnover and granting Debtor's Motion to Amend [B Doc. 57]. [Doc. 1]. The Trustee filed his Brief [Doc. 6], the Debtor responded thereto [Doc. 7],

and the Trustee filed a reply [Doc. 8].  Having been fully briefed by the parties, this matter is now ripe for disposition.

## II.    STANDARD OF REVIEW

A district court reviews the factual findings of a bankruptcy court for clear error, while conclusions of law are reviewed de novo.  In re Johnson, 960 F.2d 396, 399 (4th Cir. 1992).  Because neither party challenges the findings of the Bankruptcy Court, the only issue before this Court is whether the Bankruptcy Court correctly interpreted and applied the law.  Accordingly, this Court's review is de novo.  See id.

## III.    DISCUSSION

The two Orders from which the Trustee appeals had the combined effect of reconsidering and ultimately reversing an earlier Order that was favorable to the Trustee.  Because the Trustee appeals both the reconsideration and the opposite result it produced, as a threshold matter this Court must first determine whether the Bankruptcy Court erred in reconsidering its earlier Order.  If the Bankruptcy Court did not err in granting reconsideration, this Court will then determine whether the Bankruptcy Court erred in denying the Motion for Turnover and granting the Motion to Amend.

## A.    Order Granting Reconsideration

Because the Debtor's motion for reconsideration was filed within fourteen days of the entry of the Order, the Court will treat it as a motion to alter or amend the judgment pursuant to Rule 9023 of the Federal Rules of Bankruptcy Procedure.  <u>See</u> Fed. R. Bankr. P. 9023 (applying Fed. R. Civ. P. 59 to bankruptcy cases except in certain circumstances, none of which are applicable here); see also <u>MLC Automotive, LLC v. Town of Southern Pines</u>, 532 F.3d 269, 277 (4th Cir. 2008) ("if a post-judgment motion is filed within ten days [now fourteen days under the amended Rule] of the entry of judgment and calls into question the correction of that judgment it should be treated as a motion under Rule 59(e), however it may be formally styled") (quoting <u>Dove v. CODESCO</u>, 569 F.2d 807, 809 (4th Cir. 1978)).

The Fourth Circuit has recognized three grounds for altering or amending a judgment under Rule 59(e): "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." <u>Pacific Ins. Co. v. American Nat'l Fire Ins. Co.</u>, 148 F.3d 396, 403 (4th Cir. 1998). The decision to grant a Rule 59 motion is a matter within the broad discretion of the trial court.  <u>Id.</u> at 402.

Applying those standards to the present case, the Court concludes that the Bankruptcy Court did not err in granting reconsideration of its prior Order. Rule 59 explicitly "permits a district court to correct its own errors, sparing the parties and the appellate courts the burden of unnecessary appellate proceedings." Id. at 403. Here, in seeking reconsideration of the Bankruptcy Court's Order the Debtor presented additional authority which, she contended, demonstrated that the Bankruptcy Court's prior legal determination was clearly erroneous. Presented with a viable argument that a clear error of law had been committed, the Bankruptcy Court acted well within its discretion in granting the motion for reconsideration for the purpose of potentially correcting its own legal error. For these reasons, the Trustee's argument that the Bankruptcy Court erred in agreeing to reconsider its prior Order is without merit.[5]

---

[5] Analyzing the Debtor's motion under Rule 60 of the Federal Rules of Civil Procedure, which is made applicable to contested bankruptcy matters pursuant to Rule 9024 of the Federal Rules of Bankruptcy Procedure, would not change this result. Rule 60 provides, in pertinent part, that "the court may relieve a party or its legal representative from a final judgment, order, or proceeding [due to] mistake, inadvertence, surprise, or excusable neglect …." Fed. R. Civ. P. 60(b)(1). Here, the Debtor's Motion for Reconsideration asserted that a mistake in law had been made, and Debtor's counsel admitted to his own neglect for failing to bring the relevant authority to the Court's attention sooner. While the Trustee argues that Rule 60(b) was not intended to provide relief for error *on the part of the court* [Doc. 6 at 16], the Fourth Circuit has held that a court may correct its own mistake of law under Rule 60(b). See Compton v. Alton S.S. Co., 608 F.2d 96, 104 (4th Cir. 1979). Thus, even under Rule 60, the Bankruptcy Court did not err in granting reconsideration of its prior Order.

**B.    Order Granting Amendment and Denying Turnover**

Having determined that the Bankruptcy Court did not abuse its discretion in reconsidering its prior Order, the Court now turns to the Trustee's appeal of the Bankruptcy Court's rulings on the substantive motions.

At the heart of the parties' dispute is a fundamental disagreement regarding the nature of the Debtor's interest in her ex-husband's retirement accounts.  The Trustee argues that the Debtor's interest is nothing more than a right to payment or a receivable, which would be property of the bankruptcy estate and not subject to exemption.  The Debtor contends, on the other hand, that the divorce decree created an ownership interest in these accounts which is part of the bankruptcy estate but is otherwise subject to exemption.

Before addressing the specifics of the parties' arguments, the Court notes that the parties refer to the Debtor's interest in the TIAA-CREF account and IRA account collectively, with no distinction made between the two.  [See Doc. 6 at 8; Doc. 7 at 13].  As explained in further detail below, however, these accounts are distinct and warrant separate analysis under the Bankruptcy Code.

The filing of a bankruptcy petition creates an estate, consisting of "all legal and equitable interests of the debtor in property as of the commencement of the case . . . wherever located or by whomever held." 11 U.S.C. § 541(a)(1). Included within this broad definition of "property" is any amount owed to the debtor as a receivable or as a right to payment. See In re Baltimore Marine Indus., 476 F.3d 238, 240 (4th Cir. 2007) ("Amounts owed to the debtor under existing contracts are included within the estate."); In re Bagen, 186 B.R. 824, 828 (S.D.N.Y. 1995) ("Congress intended property of the estate to include all interests of a debtor, including a debtor's contract right to future, contingent property.").

Despite the sweeping language of § 541(a)(1), the Bankruptcy Code recognizes that certain interests are not to be included as part of the bankruptcy estate, such as a debtor's interest in an ERISA-qualified retirement plan. See Patterson v. Shumate, 504 U.S. 753 (1992) (holding that because ERISA's anti-alienation requirements satisfy the plain meaning of 11 U.S.C. § 541(c)(2), a debtor's interest in an ERISA-qualified account is excluded from the bankruptcy estate); 11 U.S.C. § 541(c)(2) (excluding from the bankruptcy estate any interest in property that is subject to an enforceable restriction on transfer under applicable non-bankruptcy law).

While funds held in an ERISA-qualified retirement plan are excluded from the bankruptcy estate altogether, funds held in an individual retirement account ("IRA"), which is a type of retirement account not covered by ERISA, are not entitled to the same protection. IRA funds become part of the bankruptcy estate. Phillips v. Bottoms, 260 B.R. 393, 396 (E.D. Va. 2000) (holding that retirement funds transferred from an ERISA-qualified account to an IRA became property of the debtors' estate upon transfer). While IRA funds are "property" within the meaning of § 541(a)(1), a debtor may nevertheless seek to *exempt* such funds from the estate. 11 U.S.C. § 522(b).

Thus, if the Debtor's interest in the retirement accounts is merely a right to payment, as argued by the Trustee, such interest is part of the bankruptcy estate. If, however, the Debtor actually has an ownership interest in the accounts, such interest may be *excludable* from the bankruptcy estate (in the case of the ERISA-qualified TIAA-CREF account), or potentially *exemptible* from the estate (in the case of the IRA account). With these distinctions in mind, the Court will analyze the Debtor's interests in the TIAA-CREF and IRA accounts separately.

### 1. TIAA-CREF Retirement Account

The Trustee argues that the Debtor has no ownership interest in the TIAA-CREF account and instead merely has a right to payment that is

subject to turnover because no qualified domestic relations order ("QDRO") was entered transferring ownership of the funds to the Debtor.

ERISA defines a "domestic relations order" as "any judgment, decree, or order (including approval of a property settlement agreement) which – (I) relates to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependent of a participant, and (II) is made pursuant to a State domestic relations law …." 29 U.S.C. § 1056(d)(3)(B)(ii). It is not disputed that the Chilsons' divorce decree constitutes a "domestic relations order" within the meaning of ERISA.

To qualify as a QDRO, a domestic relations order must "create[ ] or recognize[ ] the existence of an alternate payee's right to . . . receive all or a portion of the benefits payable with respect to a participant under a plan . . ." 29 U.S.C. § 1056(d)(3)(B)(i). Additionally, in order for a domestic relations order to qualify as a QDRO it must comply with certain technical requirements of the statute, including setting forth: (1) the name and mailing address of both the participant and the alternate payees, (2) the amount or percentage of the participant's benefits to be paid to each alternate payee, (3) the number of payments to which the order applies, and (4) the plan to which the order applies. 29 U.S.C. § 1056(d)(3)(C); see also 29 U.S.C. § 1056(d)(3)(D). A domestic relations order which awards a spouse a portion

of a ex-spouse's benefits plan but which fails to comply with these latter technical requirements would not constitute a "qualified domestic relations order" under ERISA, despite "creat[ing] or recogniz[ing] the existence of" a spouse's right to payment of benefits under the plan.

While such technical shortcomings may preclude the plan administrator from paying such benefits, see 29 U.S.C. § 1056(d)(3)(A), they have no effect on the validity of the domestic relations order which created the ownership interest in the account in the first place. See Carmona v. Carmona, 603 F.3d 1041, 1054 (9th Cir. 2010) (concluding that state courts can create enforceable interests in an ERISA plan via a DRO), In re Gendreau, 122 F.3d 815, 819 (9th Cir. 1997) ("[t]he QDRO provisions of ERISA do not suggest that [the debtor] has *no* interest in the plans until she obtains a QDRO, they merely prevent her from enforcing her interest until the QDRO is obtained.") (emphasis in original), cert. denied, 523 U.S. 1005 (1998); accord Files v. ExxonMobil Pension Plan, 428 F.3d 478, 489 (3d Cir. 2005) (concluding that an alternate payee may obtain a property interest in an ERISA-qualified account prior to the entry of a QDRO).

Here, it is undisputed that the Chilsons entered into a separation agreement with the intent to give the Debtor an interest in the TIAA-CREF account as of the date of their divorce. It is further undisputed that the state

court entered a domestic relations order incorporating the Chilsons' agreement and awarding the Debtor a portion of that account. Accordingly, notwithstanding the absence of a "qualified" domestic relations order, the Debtor obtained a legal and equitable ownership interest in the ERISA-qualified TIAA-CREF account as of the date of her divorce from Mr. Chilson. Because it is ERISA-qualified, the Debtor's interest in that account is, by its nature, excluded from the bankruptcy estate and thereby not subject to turnover. See Patterson, 504 U.S. 753 at 759. For these reasons, the Bankruptcy Court's Order denying turnover was correct.

### 2. IRA Retirement Account

The Trustee argues that the lack of a QDRO also dictates that the Debtor at most had a right to payment of funds from her ex-husband's IRA account, and therefore, these funds were also part of her bankruptcy estate and subject to turnover. [Doc. 6 at 18].

A QDRO is a creature of ERISA, a federal statute which preempts state laws which "relate to" ERISA plans. See 29 U.S.C. § 1144(a). IRAs, however, are expressly excluded from the purview of ERISA. See 29 U.S.C. § 1051. Therefore, a QDRO in accord with ERISA requirements is not necessary to divide an interest in an IRA. 1 Lloyd T. Kelso, North Carolina Family Law Practice § 6:60 n.46 (Westlaw database updated July 2015)

(citing <u>Allen v. Allen</u>, 168 N.C. App. 368, 607 S.E.2d 331 (2005)), 1 Frederick K. Hoops <u>et al.</u>, <u>Family Estate Planning Guide</u> § 18:11 (4th ed. 2015). Thus, the failure to obtain a QDRO has no effect on the validity of the Debtor's interest in the IRA account.

As with the TIAA-CREF account, it is undisputed that the Chilsons entered into a separation agreement with the intent to give the Debtor an interest in the IRA account as of the date of their divorce, and that the state court's domestic relations order incorporated the Chilsons' agreement and awarded the Debtor a portion of that account. Accordingly, the Debtor obtained a legal and equitable ownership interest in the IRA account as of the date of her divorce from Mr. Chilson, and that interest was, by its nature, part of the bankruptcy estate but potentially exemptible. <u>See</u> 11 U.S.C. § 522(b).

### 3. The Motion to Amend Schedules

Having determined that the Debtor had an ownership interest in the IRA at the time of filing for bankruptcy, and that such interest was potentially exemptible, the Court turns next to determine whether, in light of the alleged bad faith conduct of the Debtor, the Bankruptcy Court erred in allowing the Debtor to amend her schedules to exempt that previously-undisclosed interest. The Bankruptcy Court rejected the Trustee's argument in this

regard, concluding that pursuant to <u>Law v. Siegel</u>, __ U.S. __, 134 S.Ct. 1188 (2014), the Court lacked any statutory or equitable power to deny an exemption on that basis.

In <u>Siegel</u>, the debtor represented that his home was subject to two mortgage liens, and further represented that those two liens, combined with his unopposed $75,000 homestead exemption, left no equity for the trustee to administer. 134 S.Ct. at 1193. It was later determined, however, that debtor's second mortgage was a fiction created by the debtor to avoid foreclosure. <u>Id.</u> The trustee incurred substantial litigation costs throughout the adversary proceeding to overcome this fraud, and the bankruptcy court later granted the trustee's motion to "surcharge" the debtor's previously-claimed $75,000 exemption to defray those costs. <u>Id.</u> On appeal, the Supreme Court reversed the surcharge, holding that 11 U.S.C. § 522(k) of the Bankruptcy Code prevents a trustee from surcharging a legitimately claimed exemption to pay administrative expenses. <u>Id.</u> at 1194-95. The Court went on to opine in *dictum* that although state law may provide for the denial of state created exemptions based upon misconduct, no such power exists under federal law. <u>Id.</u> at 1196.

Here, the Trustee argues that the Bankruptcy Court's reliance upon <u>Siegel</u> is misplaced because the portion of the opinion relied upon is *dictum*,

and contends that the Bankruptcy Court should have concluded that the Debtor's bad acts precluded her from amending her schedules to exempt her interest in the IRA. This same argument was very recently considered and rejected in <u>Taylor v. Caillaud</u>, No. 3:15-CV-00206-GCM, 2015 WL 7738391 (W.D.N.C. Dec. 1, 2015).[6]

As noted in <u>Taylor</u>, the Trustee's argument that the <u>Siegel</u> *dictum* should be ignored runs afoul of the principle recognized by the Fourth Circuit that lower federal courts are "bound by Supreme Court *dicta* almost as firmly as by the Court's outright holdings." <u>Gaylor v. United States</u>, 74 F.3d 214, 217 (10th Cir. 1996); <u>accord</u> <u>Yanez-Marquez v. Lynch</u>, 789 F.3d 434, 450 (4th Cir. 2015); <u>United States v. Fareed</u>, 296 F.3d 243, 247 (4th Cir. 2002). Other courts that have confronted this issue have reached the same conclusion. <u>See</u>, <u>e.g.</u> <u>In re Elliott</u>, 523 B.R. 188, 189 (B.A.P. 9th Cir. 2014); <u>Taylor v. Caillaud</u>, 2015 WL 7738391, at *4; <u>In re Bogan</u>, 534 B.R. 346, 349 (Bankr. W.D. Wis. 2015); <u>In re Mateer</u>, 525 B.R. 559, 565-66 (Bankr. D. Mass. 2015); <u>In re Lua</u>, 529 B.R. 766, 773 (Bankr. C.D. Cal. 2015); <u>In re Baker</u>, 791 F.3d 677, 682 (6th Cir. 2015); <u>but see</u> <u>In re Woolner</u>, No. 13–

---

[6] The Trustee previously moved this Court to hold the instant appeal in abeyance pending resolution of this issue in <u>Taylor</u>, asserting that the two cases involved "an identical legal issue." [Doc. 3 at 2]. This Court, however, denied the Trustee's Motion. [Doc. 5].

57269–WSD, 2014 WL 7184042, at *3 (Bankr. E.D. Mich. Dec. 15, 2014) ("[T]o apply Siegel to this situation could arguably act as an open invitation for debtors to commit fraud in claiming exemptions, knowing that the Bankruptcy Court would be powerless to deny such.").

The Trustee cites Woolner, the lone contrasting opinion cited above, in support of his argument that the *dictum* in Siegel should be ignored. [Doc. 6 at 21]. In Woolner, the Debtors intentionally undervalued assets, and upon the Trustee discovering the true value of those assets, the Debtors sought to amend their exemptions to protect them. Woolner, 2014 WL 7184042 at *3. There, the court analyzed Federal Rule of Bankruptcy Procedure 4003(b), which allows a trustee to file an objection to a claim of exemption if the debtor fraudulently asserts a claim of exemption, and after noting that following the *dictum* of Siegel amounted to "an open invitation for debtors to commit fraud . . . ," the Court concluded that Rule 4003(b) authorized it to deny the Debtors' exemption due to their bad faith. Id. at *3-4.

The Woolner analysis clearly remains a minority view. In fact, the United States Court of Appeals for the Sixth Circuit (the circuit in which Woolner arose) opined that the Woolner decision is erroneous, and followed the majority in concluding that Siegel prohibits bankruptcy courts from denying exemptions due to alleged bad faith and fraudulent conduct. See In

20

re Baker, 791 F.3d 677, 682 (6th Cir. 2015); see also In re Lua, 529 B.R. at 773-74 (collecting cases).  Based upon the foregoing, this Court concludes that, pursuant to the Supreme Court's decision in Siegel, the Bankruptcy Court lacked the authority to deny Debtor's Motion to amend and exempt her interest in her ex-husband's IRA based upon her alleged bad conduct.

Next, the Trustee argues that even if the Bankruptcy Court properly relied upon Siegel, the Bankruptcy Court still erred in granting Debtor's Motion to Amend because under North Carolina law, a Debtor must show a change in circumstances to be eligible to amend her exemptions.  [Doc. 6 at 24-25 (citing the pronouncement in Siegel that state law may preclude a debtor from amending exemptions due to certain types of debtor misconduct)].  The Trustee, however, failed to present this argument to the Bankruptcy Court.  This presents no plain error nor denial of fundamental justice.  Therefore, the Court will decline to address this issue for the first time on appeal.  See Stewart v. Hall, 770 F.2d 1267, 1271 (4th Cir. 1985).

For all these reasons, the Order of the Bankruptcy Court denying the Trustee's Motion for Turnover, and Granting the Debtor's Motion to Amend is hereby affirmed.

## O R D E R

**IT IS, THEREFORE, ORDERED** that the Bankruptcy Court's February 2, 2014 Order [B Doc. 39] granting Debtor's Motion for Reconsideration [B Doc. 34] is hereby **AFFIRMED**.

**IT IS FURTHER ORDERED** that the Bankruptcy Court's January 26, 2015 Order [B Doc. 57] granting Debtor's Motion to Amend Schedules [B Doc. 26] and denying Trustee's Motion for Turnover [B Doc. 25] is hereby **AFFIRMED**.

**IT IS SO ORDERED.**

Signed: March 18, 2016

Martin Reidinger
United States District Judge